Your Honor, the second case of the morning called 212-504 Board of Education of Waukegan Community Unit School District 60 v. Shelley Orbach. On behalf of Ms. Orbach, Mr. Gilbert Feldman, on behalf of the Board of Education, Ms. Nancy Glick. Thank you, Mr. Feldman. You may proceed. If I may, I would like to start out with a short metaphor which I believe puts my argument into perspective. You have a baseball team that schedules a game and schedules the game for 9th innings. This team is in the lead until the late innings when the lead is overtaken. And in the 8th and 9th inning, the other team goes ahead and wins the game. After the game, the home team says, well, we've decided to eliminate the 8th and 9th inning and make it a 7th inning game and we win. That is essentially what happened in this case, if I may illustrate. What was the score? The score, in making up the metaphor, I didn't get around to that detail. But if I thought about it, I'd come up with it. I've used the same metaphor, except I usually say that if the home team is behind on the 9th inning, they get four strikes and three balls. Well, that's another way of doing the same thing, except it's not quite the totality as the metaphor which I gave you. You have to know more about the rules of baseball with mine also, I think. Well, I assume you're all baseball fans and that's why I gave the example. If I may illustrate what I just said in terms of this case. Both the school code and the collective bargaining agreement delegated to the school board the discretional right to devise their evaluation plan and the grading form to grade Mr. Orbach on the plan. The school code defers to the collective bargaining agreement. The school code does not provide any specific direction as to how the school board is to do this. The collective bargaining agreement in Article 4, Section 12A provides for remediation of a faculty member. If that faculty member is unsatisfactory in any one of the six categories being evaluated, that's what causes the remediation to take place. Which is what happened here. That's how it started, correct? That's how it started. Right. They followed their own contract up until the change that took place after it was all over. Article 4, Section 12C, however, provides for another year of evaluation if the overall rating is satisfactory or better. So there's a difference between how it starts and how it's graded at the end point. Did your client satisfactorily complete the remediation plan? My answer is that he did to the extent it was given to him. Yes. Well, the indicator of success of the remediation plan was a satisfactory rating in the deficient areas. Is that correct? There's language to that effect in the plan, but that doesn't direct how the evaluation is to be done. There is language to that effect in the plan. So did he successfully complete? He successfully completed it the way they gave it to him, yes.  Well, the question of an indicator of success is a term to which a body must be given by the school board when they figure out how they're going to evaluate. They determine what is the standard for determining success or not. That's how the statute and the contract were set up. In the scorekeeping, one point was given for satisfactory, was it not? Pardon me? One point was given for satisfactory. Satisfactory would be a point, yes. Well, if you take, and I think there were three categories, or were there only two categories? Six. There's six total, but the remediation plan related to two, did it not? No, it related to six. The remediation plan related to six categories? The remediation plan, if you include the form they devised as part of it and the evaluation conducted all throughout related to six categories, that's what this is about. There was no indication that there would be less than six categories until after he satisfactorily performed the evaluation under the overall standard. We'll switch from a metaphor to a hypothetical. You could have a person who doesn't teach very well in the classroom but does the other five things pretty well. We'll call that methodology, doesn't do methodology very well. And so that's unsatisfactory, so because that's one category that's unsatisfactory, we start a remediation plan. Then that person could theoretically be on remediation for the rest of his career and never get any better at teaching in a classroom because the overall evaluation keeps coming off satisfactory when you factor in the other five areas. If the school board devised a plan that way, which in this case they did, but the school board had the discretionary authority to devise the plan, what Your Honor points out is a defect which they decided was in the plan, but only after the evaluation had been completed and he had satisfactorily completed it. So if I understand the argument reduced to its simplest terms, you are arguing of necessity that only an overall unsatisfactory rating can lead to a teacher dismissal because it appears to be clear from the record that there was a deficiency in the methodology category following remediation and remained deficient. We're not disputing the facts, right? No, no factual discrepancy. And you're saying, okay, well that's all well and good, but since the ZBA provides something else, they're stuck with it and this teacher could be deficient, as my colleague says, forever and there's nothing anybody can do about it. That's not quite true because once they decided that they had made a mistake after his evaluation, there was nothing to prevent them from changing their plan. But the plan which was given to him and the evaluations were given to him were under the plan as they... The plan of the collective bargaining agreement. Pardon me? The collective bargaining agreement or the plan? What do you mean the plan? The collective bargaining agreement, and if you look at appendix page 44 of the appellee brief, you will see the form which shows in five of the six categories, he's rated satisfactory, unsatisfactory in methodology, and then it says overall rating for this observation satisfactory. On that basis, he satisfied the plan. It's page 815 in the right-hand corner, appendix 44, C892. Since we're talking about hypotheticals, what if there's a conflict between the code and the CBA? What controls? The code would control. If the code had specified how this was to be done, we're not arguing that the code would not prevail, but the fact is the code did not. It left it to the school board to do this, and they did it in their collective bargaining agreement and in this evaluation form which they have here. Now, after it's all over, they say, well, we'll change the basis of deciding whether he satisfactorily performed or not. It's no different than the baseball example I gave you. They could have done this at any time before they evaluated him, but you can't change the rules of the game which you created after it's all over. That's what they did here. So the remediation plan only dealt with the two areas, but you're talking about the evaluation form that they used to see whether the remediation was working. It's only the evaluation form that indicated the areas that would be evaluated. It's part of the evaluation plan. Right, but I'm talking about the actual remediation plan only dealt with the two areas that were deficient. The plan that was put in place and signed by... It indicated those areas were deficient, yes. Right. That was the plan, but then you're taking issue with the way they evaluated performance under that plan. They decided to evaluate it this way. There's no factual dispute here. They did this. He took it this way, and when it was over, they tell him, well, you didn't pass methodology, and therefore we're deciding you didn't satisfactorily perform. Then when they get to court, they devised a third explanation, which said we're going to average methodology and management, and we're going to come out with an average. We'll count it this way, and under this formula, you did satisfactorily perform. So there are three formulas. You're saying that the newest one that they came up with, your client was successful and was remediated? As he was remediated, he was successful. Their own document shows that. It's their document. So they're confessing error in their second interpretation of what's transpired? That's exactly what they're doing. Well, they're confessing error twice. When they sent him the letter saying he had not satisfactorily performed, they said it's because you were unsatisfactory in methodology. When they got into court, you'll see in the record, they changed that. They said, well, what we're going to do is we're going to average out methodology and management and do it a different way and come out with an unsatisfactory. But my argument is they can't do this ex post facto. The man is entitled as a matter of basic due process to take the plan and be evaluated in the plan according to their rules, not to the rules which are changed after it was determined he was satisfactory overall. That's essentially the argument. I would also note, depending on how much time we go through, that I, I, the hearing officer decided the case based on this one issue. There are a number of issues which arrived before him. He said it was unnecessary to decide the others. Throughout, I have taken the position that even if he was overturned, there would have to be a remand so he could decide the other issues. That's a matter of due process. I was entitled to that since there was no decision made by anybody with regard to those issues. By the statute, the hearing officer had to decide those issues. When Judge Stark ruled, did you raise that issue? I raised it before him both in the written brief and in oral argument before him. But then he ruled and then did you remind him of it? I mean, I know you said it during oral argument, but I certainly did remind him after he ruled and ignored it. I think that would be an undignified thing to do with the court. I had just said it to him that he had to do that. It seems to me that it's not, it comes upon me to go beyond that. I did it throughout. The, another issue which we have here is the standard in this case. The standard, pardon? What did you say? The standard in this case. The standard clearly is clearly erroneous. The application of the law to an undisputed set of facts. The facts here are not in dispute. The question is how the law applies here. And the standard to, for that is clearly erroneous. The appellee says it's de novo, but they're just wrong. That was made very, very clear by the Illinois Supreme Court. The case law. What case did the Illinois Supreme Court say? It says it repeatedly. I said it in the brief, the first one. But there are five or six of them now where they say that. Okay, so it's cited in your brief? Yes, yes. The case law, I've cited the due process cases which apply to this situation. And it is clear as a matter of due process, if not of contract law, that you cannot change the rules after the game is over when you have the discretion to make the rules in the first place. That's a violation of the man's constitutional right to procedural due process. And I've also cited some cases. These are pages 14, 15 of my brief. I've cited some cases that say even in your contract law, when you have one party that has the power to control the situation in implementing the contract and to set up the terms and conditions of how to do it, they're bound by that. They cannot come up with something later and argue that's what I should have done. So I would agree that if the statute specified how to conduct these evaluations to grade, that statute would be controlling. That's not an issue. But the fact is the statute doesn't do that. What my opponent is arguing is, well, if you look at the purpose of the statute, what we did was wrong. Well, I really don't have to argue that. The question is not the purpose of the statute. The question is whether the statute required the Board of Education to perform this function the way they ultimately did, in which case they would be voiding their own collective bargaining contract and their own evaluation. You're saying the statute defers to the collective bargaining agreement that's in place at the time. It defers to the employer. Right. Nothing, they can change it any time they want it. My only position is they can't change it as to this individual after he's been heard and he's been evaluated based upon the original interpretation by the school board. Do you see the CBA as mandating the use of this form to evaluate a remediation plan? Because it talks about the overall school board. It mandates that the overall standard is the one that will be used in evaluating. And that's very clear, as the hearing officer found, because to get into the process, as Your Honor pointed out, there's a different standard. You get into the process if any one deficiency in one category is shown. But then it says in order to be evaluated unsatisfactory, that requires the overall rating. That's what it says. I thought early on you were saying that the school board chose to use this form in evaluating the remediation plan. Yes. Okay, but what you're saying, though, is that they have to use this form because you have to have an overall score. Yes, and also the collective bargaining contract they freely entered into provided that. That's what I'm talking about, under the agreement. Yes. Okay. But if the statute had precluded them from entering into such a collective bargaining contract, we'd have a different case, but it doesn't do that. And so, essentially, I go back to my original metaphor. You can't ex post facto, after a man has been tried or rated, et cetera, decide, okay, you won, but we're going to change the rules so you're loose. That's what's really involved in this case, very little more. Any other questions? All right, Counselor, you'll have time for one more question. Thank you very much. Ms. Lisher, you may proceed. Thank you. Good morning, Your Honors. Counsel. My name is Nancy Lisher, and I represent the appellee. The facts and the applicable statute and the CBA and the remediation plan are all clear that the purpose of remediation is to cure the deficiencies. The school code provides that if there's an unsatisfactory rating, which there was initially, then you must create a remediation plan designed to correct deficiencies. So the remediation plan was drafted as required under the code and as provided by the collective bargaining agreement, or CBA. The CBA itself says the remediation plan shall be developed to what? Correct the deficiencies. It also says that the indicators of success must be defined in the remediation plan, and the remediation plan specifically says you must have satisfactory ratings in what? Each of the deficient areas. So you have all three documents saying that. Why doesn't it say deficient categories instead of areas? Why doesn't what say that? The CBA? Well, you said the deficient areas. To me, what does area mean? What's the definition of area? Well, if you go to the remediation plan, it explicitly says that. What it says is the deficiencies are noted below, and then it says the wording and numbering follows the official annual evaluation. So if you look at A1, starting with A1, that's where that is set, you will see that under the category management, each deficiency is listed. And because he was not found deficient in every single item or matter listed under that category, I mean, I don't know how you want to say item, matter, deficiency, but, for example, under management, he was not found deficient in five and six, so that was eliminated from the remediation plan. I don't think counsel is disputing a lot of what you're saying, and maybe we can agree on certain things just to expedite. I think he agrees there was deficiency in methodology, the remediation plan was initiated legitimately. At the end of the day, he hadn't improved in the methodology. He's still deficient, no question. He seems to be saying that's all well and good, but the CBA that governed this at the time it was applied, at least under his interpretation, required an overall unsatisfactory rating to be dismissed, even if he remained deficient in the original category. What is your response to that? Well, the CBA doesn't provide that, Your Honor. It says initially it says if there's an overall satisfactory at the end of remediation, then there are three successive years of evaluation, and the ramification is he can expunge his file of the negative or the unsatisfactory evaluation and expunge from his file the remediation plan. But the hearing officer and Mr. Feldman stopped reading too soon, because if you go to the very next paragraph, it says, what do you do if the remediation plan results in an overall rating of unsatisfactory at the end of the remediation plan? Given his admission that he still had these deficiencies and he did not successfully complete the remediation plan, then under the CBA it says the board shall automatically institute dismissal under the code. Now, wait a minute. Was his overall rating unsatisfactory? No matter what he admits to, was his overall rating unsatisfactory at the end of the remediation? Well, my response to that is, Your Honor, the evaluators filled out the entire form and they gave him an overall rating, but that's irrelevant, because under the code how you are rated overall on an annual form is not relevant. Well, what he's saying is that the CBA controls because the code defers to the individual district. Their collective bargaining agreement is what controls. That's the contract. That's what he's saying. Well, he's wrong. He's saying forget the code. I'm sorry. He also admitted that the code controlled, and that's the law and that's the statute, which is, and he admitted that. The code controls if it's specific. If it defers to the CBA, then why would the code control? Okay. Well, the code controls with regard to the evaluation forms as well, because the code specifically says, Dear School Districts, you don't have to create a new remediation evaluation form. You can use the annual forms, but they are, quote, separate and distinct, and, quote, not subject to the guidelines and procedures relating to annual evaluation. So the fact that these teachers included where extraneous matters filled out the entire form, type A personalities, I can only presume that they felt compelled to fill out everything, but the truth is is that the act of the evaluators in filling out the entire form does not amend the code. It doesn't change the code. It doesn't change the CBA. But the code doesn't say how to evaluate satisfactory completion of the remediation program. The code says if you do not satisfactorily complete remediation, you will be fired. I understand that. But the code doesn't say how to evaluate this, and it seems that the district took it upon themselves to evaluate it in such a manner as to at least lead this man down the path as to think as long as I get overall satisfactory, I'm okay. Well, not exactly, Your Honor, because he was told from the very beginning in the plan that the remediation, the level of performance that is expected is right out there in the plan. He had, for example, uses discipline effective and fairly. What is the deficiency? During class time, students are left with blocks of unstructured time during which they stay in inappropriate behavior. What's the remediation step, i.e., what are you going to be evaluated on? And that's in the plan. He should deliver a structured, well-prepared daily lesson to keep the students on task, eliminating many minor behavior occurrences. You have to remember these remediation plans aren't punitive. They're geared to have consulting teachers. There were people available every week to talk to. He had pre-conferences. On several of these evaluations, he was warned up front that the content of your lesson is probably inappropriate. Do you want to rethink that? And he said no and just did it anyway. Well, your argument here, as I would concede, a superficial amount of appeal in the real world. You're saying there's a teacher. He's evaluated. He's fairly deficient in an important category. He goes through remediation. It doesn't change. Does it make any sense to keep a teacher on who could go at him for night and for years and never improve in an important category? He's saying, and he has a certain amount of a superficial, logical appeal, is maybe that doesn't seem logical, but that's what the CBA says that you can't fire somebody even if they're deficient unless it's an overall unsatisfactory, and that's an agreement. So I guess I'm going to turn around and ask you. Did the CBA provide that a deficiency in a category that remained deficient after remediation mandated automatic dismissal? Does it specifically say that? I would submit it does, and it says it in two ways. The CBA says that a remediation plan must contain what is an indicator of success. Well, that doesn't say anything about somebody being fired, does it? I'm sorry? Dismissing somebody is different than saying what should be in the plan. Does it say that they have the right to fire a teacher if they remain deficient in the category that triggered the remediation? Does it say that anywhere specifically other than your interpretation? I think it says it when it says, if the teacher on a remediation status is still evaluated with an overall rating of unsatisfactory at the end of the remediation plan, the board shall institute dismissal procedures. It shall automatically institute. Was he evaluated overall unsatisfactory? That's the question. I agree with your statement. He's saying he wasn't. Your Honor, what you're saying is the fact that the evaluator spilled out the entire form somehow means that he passed the plan successfully. The point is, and the code says, you have to pass the plan. The plan was there. Mr. Orbach knew about it. He agreed to it. He was told. If the code doesn't specify how the evaluation plan, that's up to the CBA. You can't go back to the code. The code didn't say how the person is supposed to be evaluated. They left it up to the CBA, didn't they? No. The plan has to contain a description of each teacher's duties and responsibilities and the standards which he is expected to conform. And if you look at the plan, it says, here's the deficiency, here's the item or the subcategory, here's the deficiency, and here's how you remediate it. I don't think you can look at a single paragraph and say, oh, well, you weren't specific enough. Because the truth is, the code says you have to pass the plan. The CBA says you have to pass the plan. And the CBA says, what is the indicator of success? And the CBA decides how you pass the plan. His argument is only an overall unsatisfactory can lead to your dismissal. An overall unsatisfactory in the remediation plan leads to dismissal, and that's exactly what happened here. Could I make a few queries? It seems like there's, at least in my mind, I'm confused because the term overall is being used, it seems to me, in more than one way. In one way it can mean, when you say overall unsatisfactory, it means that if there are one or two or six categories and any of the categories are not remediated, then overall it is unsatisfactory because not all are satisfactory. There's also a possible meaning of, when you say overall, because of the overall evaluation, you're talking about using numerical averaging to determine whether or not there's overall unsatisfactory to the extent that, on average, they got a one in all the categories that need to be remediated. So it seems to me that your argument is, when you say overall unsatisfactory, you are saying that if there is one category that he has not remediated, that he has overall not satisfied the remediation plan. Is that what you're arguing? I'm arguing, Your Honor, that he has to successfully complete the remediation plan, and since he ended up with 11 deficiencies out of 16 areas under two categories, he did not complete it. When you say, well, overall, are you saying not all categories? When I say overall, I'm talking about an overall average of those two categories alone. Correct. If you look at that, then there are 11 out of 16 that he didn't correct. And what does that mean? So he never improved. If you took the numbers, like one for satisfactory and two for excellent and zero for unsatisfactory, did anybody ever figure out what the overall average number was for the two categories? I don't believe that anybody did. Like in one category, it might have been a 7.3 or something like that, and the other one might be a 6.5 or something. I don't recall that anybody went through a numerical manner in that way, but if you look at these forms, it's excellent satisfactory, unsatisfactory, not observed. And that was the criteria used as the code permits on this annual evaluation form where he was being judged based on the deficiencies as stated in the plan. Your Honor, even if you look at the two categories alone, it was conceded in the lower court that it wasn't a satisfactory, even if you looked at just the two. And I think he probably would concede that. He didn't successfully improve in the categories. His point is, so what? Does the contract specify that if you don't – this thing could have been completely avoided. All it would have to say, very simply, is if remediation is triggered because of an unsatisfactory in any category, following remediation, that category does not improve. You have the right to dismiss the teacher. Okay. And that would be very simple, and I would agree with you. Well, but they didn't say any category. They said any deficiency, and what's the difference? You want to break it into two categories. What the code, the plan, and the CBA says is the deficiencies. No. The CBA says that. There's a satisfactory and unsatisfactory component of this that was put in there. Your Honor. That muddies the waters. You're not reading the entire CBA. The CBA says results of remediation. If the results of remediation are successful, then if for three years he has satisfactory evaluations, he can expunge his file. Results of remediation if unsatisfactory, and this is what – you can't stop reading the CBA. That says if you're still evaluated with an unsatisfactory at the end of the plan – In any category or overall? Well – See, that's the problem that you're overlooking and ignoring here. I'm not actually ignoring it, Your Honor, because the CBA says explicitly, the written remediation plan shall contain the following components, indicators of success. What's an indicator of success? Successfully completing the plan. If you have the same deficiencies at the end of the plan, under no stretch of the imagination can you say he successfully – He's subject to dismissal. That's what it should say. Why does the CBA have to say that if the CBA says create a plan with the agreement of the teacher? That is done. The teacher agrees to it. There are deficiencies listed. There are remediation steps, and he's told you've got to succeed on the plan. Because if you're trying to fire somebody, you have to follow the strict agreement. That's the answer to that question. The strict agreement says – That's what counsel's saying. I know what he's saying, but the agreement says if you do not succeed in completing the plan, you're automatically dismissed. I think the code says it, Your Honor. The real question is that subparagraph A under remediation mentions categories. It does. And then we go on to C, and it doesn't mention categories again. I'm sure there's some way I can tell you. But including something in one area – If you include it in one area and you exclude it in the other area, it's presumed that you excluded it for a reason. Well – In C, we talk about overall rating. We don't talk about categories. In A, we talk about an unsat rating in any of the categories. I'm sorry, where are you, Your Honor? In remediation, section 12A talks about any teacher who receives an overall unsatisfactory rating in any of the categories. Overall in any of the categories. And then we go down to C, which talks about when you're going to discharge somebody. It talks about they have to successfully complete remediation with an overall rating of satisfactory or better. And, again, it includes the word categories in A, but it doesn't include it in C. That's the only thing that I'm pointing out to you. Your Honor, you still cannot read this code in a way that conflicts with the statute. And the statute says if you do not successfully complete this plan with a score of satisfactory or better, then you, quote, shall dismiss. So it's mandatory under the code, and under no circumstances can the CBA control over the code. But you can construe the CBA consistently with the code if you say results of remediation. If you're satisfactory at the end of the plan, you can expunge it after three years. But if you're unsatisfactory in completing the plan, automatic dismissal. And that's the CBA word, automatically institute dismissal. Does the statute provide for expungement? I don't remember, Your Honor. I can provide that after the argument, if you'd like. Just another point, and it's a point that I had actually written. But Judge Burke made this point, so I'd like to just emphasize it. Under their interpretation, if you have a teacher who has deficiencies and you have evaluators who, for whatever reason, fill out the entire form and get, when you look at all things, even those items or matters that are not under remediation, then you're going to have a teacher there forever. The deficiencies will never improve. The school district can't dismiss them. The students at the end will pay the price. And the teachers, it encourages substandard teaching. They have no incentive for improving. It could simply provide that if you have a remediation triggered by a deficiency in one category, if there's a deficiency at the end of the remediation plan, the teacher is subject to dismissal. It cures everything you've just said. Your Honor, it doesn't say categories. It says deficiencies. And it says deficiencies in the code. It says it in the CBA. It says it repeatedly in the plan. It does, but then you allow the CBA to decide what is deficiencies, what are satisfactory ratings. As Justice Burke just pointed out, you could have carried things down into the next paragraph. You may not like the CBA, but you're stuck with it at the moment. Well, at this point, Your Honor, it's the code that controls. And the code says if you do not correct the deficiencies. And that's what the code says. It does. And then the CBA says that it will decide whether or not you correct the deficiencies. The code defers to the CBA in making that determination. The code says the plan must define what is success. And the plan that Mr. Orbach agreed to says you have to successfully complete the plan with a satisfactory or better. Whenever you do an evaluation, Your Honor, there's going to be subjectivity. But there were meetings before and after each evaluation. He had consulting teachers. The division head was there. He knew what was expected to him. Every single deficiency was listed. Every single remediation step was listed in the plan, which he had to complete successfully. Yes, Your Honor. I'm going to ask a question, opposing counsel. So I thought I'd ask if you could say, since you're not going to have the chance to respond. What's the point of having a remediation plan to remediate categories that have already been determined based upon the primary or the original evaluation to be satisfactory? What's the point of having all the parts of the evaluation form filled out? What's the point of having a remediation plan for segments, categories, itty-bitty parts, minutia, whatever, that have already been deemed from the first evaluation to be satisfactory? Your Honor, the remediation plan did not contain items that were not deficient. It only included those items that were deficient. And that's in the remediation plan. I didn't ask you for a fact. I said, why would it? I'm sorry. Can you repeat the question? Why would a remediation plan include issues, categories, segments of categories that have already been evaluated as satisfactory? There would be no reason at all. The purpose of the plan is to improve teacher performance, Your Honor. They wouldn't include it. All right. Thank you, Counselor. Thank you, Your Honors. Mr. Feldman, Rebuttal Order. I have only two minor points plus an answer to the question I'm going to be asked by Judge McBarry. Well, you were asked a question, so. The only reason I can think of is to make it much more difficult for him to achieve a satisfactory grade because it's not only these six categories we're talking about. As you go through the documents, you will see each of these six categories had many, many subcategories on all of which he is being tested and graded. So if they had narrowed what they were testing and grading him on, he would have had a much easier time by confining himself to that rather than to not six, but it's closer to 40 items in which he was being graded. And yet, ironically enough, just as you've been hammering all morning that the school district is stuck by the CBA, so are the teachers stuck with that? Yes. Okay. Yes. My other two points are very quick. I've already made one, and that is counsel says it's a matter of filling out the form. It's not a matter of filling out the form. As you see in these documents, all three evaluations, he was evaluated in detail on each of these 40 or so subcategories, both of the two that they now say are relevant and the other four. And finally, Judge McLaren has asked, how do you define overall? What do you mean? Well, there are two definitions. One is in the collective bargaining contract, which distinguishes between when you go in compared to when you come out of the evaluation. But the second is on each of these forms which he was given after each of the three evaluations, it says what it means and says how you're going to count under it, which is what they did. Any other questions? No. Okay. Thank you, counsel. Thank you both attorneys for the spirit of the debate, and we'll take the case under advisement and make a decision in due course.